LEE, P.J.,
for the Court.
FACTS AND PROCEDURAL HISTORY
¶ 1. During her employment at Telepak Networks, Inc., a subsidiary of Telapex, Inc., Nikki Niolet accompanied her supervisor, Phil Rice, to a business convention out of state. Niolet alleged that while at the convention, Rice became intoxicated, assaulted her, attempted to have sexual relations with her, and engaged in prolonged and detailed sexually-charged language with her. According to Niolet’s complaint, the company investigated the incident and found that Rice had sexually assaulted her, but since he “blacked out,” he was not responsible for his actions. Niolet continued to work with Rice until she resigned from the company approximately a year later.
¶ 2. Niolet filed a complaint in the Circuit Court of Madison County against Rice, alleging assault, battery, and malicious interference with her employment. Rice filed a motion to compel arbitration under an arbitration agreement Niolet had signed as a condition of her employment with Telepak. Rice was not a signatory to the arbitration agreement. In response to Rice’s motion to compel, Niolet conceded *33 the malicious interference with her employment claim, admitting that it arguably was covered by the arbitration agreement. She proceeded with her claims for assault and battery. The trial court granted Rice’s motion to compel arbitration and dismissed the case. The trial court’s order stated that Rice could hold Niolet to the terms of the arbitration agreement because the agreement was valid, Niolet’s claims were within the scope of the agreement, and Rice was an intended third-party beneficiary to the agreement.
¶ 3. Niolet now appeals, asserting the following issues: (1) the trial court erred in finding that her claims for assault and battery were within the scope of the arbitration agreement, and (2) the trial court erred in finding that Rice was an intended third-party beneficiary of the arbitration agreement. Finding that the trial court erred in compelling arbitration, we reverse and remand this case for proceedings consistent with this opinion.
STANDARD OF REVIEW
¶ 4. “The grant or denial of a motion to compel arbitration is reviewed de novo.” Holman Dealerships, Inc. v. Davis, 934 So.2d 356, 358(¶4) (Miss.Ct.App.2006).
DISCUSSION
I. THE SCOPE OF THE ARBITRATION AGREEMENT
¶ 5. This Court conducts a two-prong inquiry in determining the validity of a motion to compel arbitration under the Federal Arbitration Act. East Ford, Inc. v. Taylor, 826 So.2d 709, 713(¶9) (Miss.2002). “The first prong has two considerations: (1) whether there is a valid arbitration agreement and (2) whether the parties’ dispute is within the scope of the arbitration agreement.” Id.; Smith v. Captain D’s, LLC, 963 So.2d 1116, 1119(¶ 11) (Miss.2007). “Under the second prong, the United States Supreme Court has stated the question is ‘whether legal constraints external to the parties’ agreement foreclosed arbitration of those claims.’ ” East Ford, 826 So.2d at 713(¶ 10) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). Examples of external constraints are “contract defenses available under state contract law such as fraud, duress, and uncon-scionability.” Id. (citing Doctor’s Assocs., Inc. v. Casarotto, 517 U.S. 681, 686-87, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996)).
¶ 6. No argument is made that this is not a valid arbitration agreement or that external legal constraints exist that would foreclose arbitration. Therefore, the only remaining issue to be discussed is whether Niolet’s claims for assault and battery are within the scope of the arbitration agreement. In determining whether a party’s dispute is within the scope of an arbitration agreement, “[e]ourts often characterize arbitration language as either broad or narrow. Broad arbitration language governs disputes ‘related to’ or ‘connected with’ a contract, and narrow arbitration language requires arbitration of disputes that directly ‘arise out of a contract.” MS Credit Ctr., Inc. v. Horton, 926 So.2d 167, 175-76(¶ 24) (Miss.2006) (quoting Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd., 139 F.3d 1061, 1067 (5th Cir.1998)).
¶ 7. Telapex’s “pre-dispute resolution agreement” states that it covers the following:
all matters directly or indirectly related to your recruitment, potential employment, or possible termination of employment, including, but not limited to, claims involving and/or against the Company, employees, supervisors, officers, and/or directors of Telapex, Inc. or any *34 affiliates, as well as any other common law claims for wrongful discharge or other similar claims.
The language in this arbitration agreement is broad as it covers “all matters directly or indmectly related” to Niolet’s employment with Telapex.[1] Therefore, “it is only necessary that the dispute ‘touch’ matters covered by the contract to be arbitrable.” Captain D’s, 963 So.2d at 1121(¶ 15) (quoting Horton, 926 So.2d at 176(¶ 25)). We find that a claim for assault and battery in no way touches upon matters covered by the agreement. Despite the arbitration clause referencing claims against supervisors, the provision is limited to employment-related claims. Niolet’s claims for assault and battery are unquestionably not directly or indirectly related to her employment. This holding is consistent with the supreme court’s holding in Captain D’s, where under the broad language in an arbitration agreement, the supreme court found that “a claim of sexual assault neither pertains to nor has a connection with [the employee’s] employment.” Id. at (¶ 16).
¶ 8. We find that the trial court erred in finding that Niolet’s claims were subject to arbitration; therefore, we reverse and remand this case for proceedings consistent with this opinion.
II. THIRD-PARTY BENEFICIARY
¶ 9. The trial court found that although Rice was not a signatory to the arbitration agreement, he was an intended third-party beneficiary and, therefore, could enforce the terms of the agreement against Niolet.
¶ 10. “[Arbitration agreements can be enforced against non-signatories if such non-signatory is a third-party beneficiary.” Adams v. Greenpoint Credit, LLC, 943 So.2d 703, 708(¶ 15) (Miss.2006). Here, Rice, a non-signatory, is trying to enforce an arbitration agreement against Niolet, a signatory. Therefore, we find that the proper issue for discussion is not whether Rice is a third-party beneficiary, but whether Rice can compel arbitration against Niolet under the terms of the agreement. Sherer v. Green Tree Servicing, LLC, 548 F.3d 379, 383 (5th Cir.2008).
¶ 11. In Sherer, Sherer signed a loan agreement with Conseco Bank, Inc., which stated that all claims “arising from or relating to ... the relationships which result from this Agreement ... shall be resolved by binding arbitration.” Id. at 380. The loan was subsequently transferred to Green Tree Servicing, LLC. Id. A dispute arose over the loan agreement, and Sherer filed suit against Green Tree in the United States District Court for the Southern District of Mississippi. Id. Green Tree filed a motion to compel arbitration, which the district court denied based on its holding that equitable estoppel did not apply. Id. at 381. The Fifth Circuit Court of Appeals reversed the decision of the district court and found that Green Tree could compel arbitration based on the plain language of the agreement with Conseco Bank, in which Sherer validly agreed to arbitrate claims against non-signatories whose relationships resulted from the agreement. Id. at 383. The Fifth Circuit stated that looking first at “a theory such as equitable estoppel in order to determine *35 whether a non[-]signatory may compel arbitration ... skips the first step in determining whether a valid agreement to arbitrate exists: ‘the terms of the agreement’ dictate ‘[w]ho is actually bound by an arbitration agreement.’ ” Id. at 382 (quoting Bridas Sapic v. Gov’t of Turkm., 345 F.3d 347, 355 (5th Cir.2003)).
¶ 12. According to the plain language of the arbitration agreement with Telapex, Niolet agreed to submit to arbitration “claims involving and/or against ... supervisors.... ” Therefore, Rice, as a supervisor, could hold Niolet to her agreement to arbitrate claims against him in his role as supervisor. However, as we found in Issue I, Niolet’s claims for assault and battery did not arise out of her employment with Telapex, nor were Rice’s actions within his role as supervisor. We reverse the trial court’s ruling on this issue as its finding that Rice was a third-party beneficiary was erroneous.
CONCLUSION
¶ 13. For the reasons stated, the judgment compelling Niolet to arbitration and dismissing her claims is reversed, and this case is remanded to the trial court for further proceedings consistent with this opinion.
¶ 14. THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT IS REVERSED, AND THIS CASE IS REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, C.J, MYERS, P.J., IRVING, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION. MAXWELL, J., NOT PARTICIPATING.

. Niolet argues that the arbitration clause only applies to claims related to her recruitment or termination and not to matters that occurred during her employment. The wording in the quoted paragraph seems to limit the agreement to these certain events. However, the first paragraph of this section, which is entitled "Scope of Private Dispute Process,” states that the agreement covers matters relating to "recruitment, employment with, or termination of employment." Therefore, we find that the scope of the agreement covers employment-related matters that occur during employment.