[Cite as *Crider v. GMRI, Inc.*, 2020-Ohio-3668.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

STEFANI CRIDER,                                    :

    Plaintiff-Appellee,                     :

                                 No. 108863

    v.                                              :

GMRI, INC., D.B.A., THE CAPITAL
GRILLE, ET AL.,                                    :

    Defendants-Appellants.

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 9, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-915573

---

### *Appearances:*

Eric W. Henry, *for appellee.*

Littler Mendelson P.C., Edward H. Chyun, and Jennifer B.
Orr, *for appellants.*

PATRICIA ANN BLACKMON, P.J.:

{¶ 1} Defendants-appellants, GMRI, Inc. ("Capital Grille"), and Alexis

Lundeen ("Lundeen") (collectively, "GMRI"), appeal from the order of the trial court

that denied their motion to dismiss or stay proceedings pending the arbitration of claims filed by plaintiff-appellee, Stefani Crider, a former Capital Grille employee. GMRI assigns the following error for our review:

> The trial court erred when it denied [GMRI's] motion to dismiss or to stay proceedings and failed to order [Crider] to arbitrate her claims.

{¶ 2} Having reviewed the record and the controlling case law, we affirm the decision of the trial court.

{¶ 3} Crider applied for a position with Capital Grille in 2016. Documents contained within the applicant tracking system indicate that Crider received a copy of GMRI's dispute resolution process ("DRP") and that this agreement "requires that disputes that involve the matters subject to the agreement be submitted to mediation or arbitration pursuant to the arbitration agreement rather than to a judge or jury in court." However, it does not appear that Crider signed a DRP acknowledgment form or other provisions outlined in the DRP. GMRI hired Crider as sales and marketing manager of Capital Grille on February 6, 2016. Marc Hall ("Hall") worked as a coemployee, Nicholas Soike was her managing partner, and Lundeen served as regional manager.

{¶ 4} On November 15, 2018, Crider filed a police report with the Lyndhurst Police Department accusing Hall of gross sexual imposition, and Hall was subsequently charged with disorderly conduct in connection with this incident. On November 19, 2018, Lundeen advised Crider that she was being investigated for using profanity at the workplace, a charge Crider denied. On November 26, 2018,

Lundeen instructed Crider to meet her at a coffee shop to discuss her job. When Crider arrived, Lundeen advised her that she was terminated from employment.

{¶ 5} Crider filed an eight-claim complaint against GMRI on May 20, 2019. In relevant part, Crider alleged that she was subjected to repeated instances of sexual harassment from Hall, including crude and vulgar comments and inappropriate touching. Crider maintained that she immediately reported to Soike and Lundeen, but Hall was never reprimanded. On November 15, 2018, according to Crider's complaint, Hall refused to leave her office when asked to do so, then "wrapped his arms around her chest in a bearhug [and] began running his hands down her thighs." Despite reporting the incident to Soike, Hall was permitted to continue working that evening, and Crider was terminated within days of reporting the incident to the police. Crider set forth claims for assault and battery, negligent hiring and retention, negligent and intentional infliction of emotional distress, wrongful termination in violation of R.C. Chapter 4112, hostile work environment, negligent failure to provide a safe work environment, unlawful retaliation, and aiding and abetting in Hall's unlawful conduct.

{¶ 6} In lieu of an answer, GMRI filed a motion to dismiss or stay proceedings pending arbitration. In relevant part, GMRI maintained that Crider agreed to the DRP which is the "sole means for resolving covered employment-related disputes." In opposition, Crider denied signing the DRP, and maintained that GMRI waived its provisions by failing to employ mediation or other DRP remedies and immediately terminating her employment. She further argued that

her claims for relief were independent of her employment relationship as a matter of law.

**{¶ 7}** The trial court denied GMRI's motion or dismiss or stay proceedings pending arbitration without opinion.

### Arbitration of Dispute

**{¶ 8}** In the assigned error, GMRI asserts that the trial court erred in denying its motion to dismiss or stay proceedings pending arbitration.

**{¶ 9}** R.C. 2711.02(B) provides for the enforcement of an arbitration agreement when a party requests a stay of litigation pending arbitration:

> If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration.

**{¶ 10}** Ohio courts recognize a presumption favoring arbitration that arises when the claim in dispute falls within the scope of the arbitration provision. *Thomas v. Hyundai of Bedford*, 8th Dist. Cuyahoga No. 108212, 2020-Ohio-185, ¶ 9, citing *Wallace v. Ganley Auto Group*, 8th Dist. Cuyahoga No. 95081, 2011-Ohio-2909, ¶ 13. However, parties cannot be compelled to arbitrate a dispute they have not agreed to submit to arbitration. *Natale v. Frantz Ward, L.L.P.*, 2018-Ohio-1412, 110 N.E.3d 829, ¶ 9 (8th Dist.), citing *Council of Smaller Ents. v. Gates, McDonald & Co.*, 80 Ohio St.3d 661, 1998-Ohio-172, 687 N.E.2d 1352, and *Locum Med. Group, L.L.C. v.*

*VJC Med.*, 8th Dist. Cuyahoga No. 102512, 2015-Ohio-3037, ¶ 10. Therefore, a court has an independent duty to determine if the claims involved are subject to arbitration under the arbitration agreement. *Id.*; *Academy of Med. v. Aetna Health, Inc.*, 108 Ohio St.3d 185, 2006-Ohio-657, 842 N.E.2d 488, ¶ 14. On appeal, we review the trial court's ruling de novo, a standard under which we accord no deference to the ruling of the trial court. *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 2; *Arnold v. Burger King,* 8th Dist. Cuyahoga No. 101465, 2015-Ohio-4485, 48 N.E.3d 69, ¶ 11.

**Assault and Related Claims**

{¶ 11} In *Arnold*, the plaintiff asserted she was raped by her supervisor while at work. The plaintiff set forth claims against her employer and supervisor for sexual assault, respondeat superior, negligent retention, emotional distress, intentional tort, employment discrimination. The employer and supervisor moved to compel arbitration under an arbitration agreement that pertained to "any claims arising out of" employment, and "claims or controversies relating to events outside the scope of your employment." The trial court denied the motion to compel arbitration. *Id.* at ¶ 1. In undertaking de novo review, this court considered the action was not within the scope of the mandatory arbitration agreement, as the claims existed independent of the employment relationship where they could be maintained without reference to the contract or relationship, and the claims were not a foreseeable result of the employment. *Id.* at ¶ 65-67. Additionally, this court also

concluded that the agreement was unconscionable.  *Arnold*, 2015-Ohio-4485, 48 N.E.3d 69, at ¶ 82-83.

{¶ 12}  The *Arnold* court explained that Ohio courts apply the reasoning set forth in *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386 (6th Cir.2003), to determine whether a cause of action is within the scope of an arbitration agreement.  *Id.*, citing *Academy of Medicine v. Aetna Health, Inc.*, 108 Ohio St.3d 185, 2006-Ohio-657, 842 N.E.2d 488 at ¶ 3.  Under the *Fazio* test, "a proper method of analysis here is to ask if an action could be maintained without reference to the contract or relationship at issue.  If it could, it is likely outside the scope of the arbitration agreement." *Fazio*, 340 F.3d at 395.  *See also Complete Personnel Logistics, Inc. v. Patton*, 8th Dist. Cuyahoga No. 86857, 2006-Ohio-3356, ¶ 15 ("tort claims that may be asserted independently, without reference to the contract, fall outside the scope of the arbitration provision").  The court also considered whether "the acts complained of were a foreseeable result of Arnold's employment."  *Id.* at ¶ 62.

{¶ 13}  The *Arnold* court recognized that the analysis is undertaken "based upon the factual allegations in the complaint instead of on the legal theories presented."  *Id.* at ¶ 31, quoting *Academy of Medicine* at ¶ 29.  Additionally, this court recognized that "the existence of a contract between the parties does not mean that every dispute between the parties is arbitrable."  *Id.* at ¶ 31, quoting *Academy of Medicine* at ¶ 29.

{¶ 14}  The *Arnold* court also looked to the following considerations set forth in *Aiken v. World Fin. Corp.*, 373 S.C. 144, 644 S.E.2d 705 (2007):

even the most broadly-worded arbitration agreements still have limits founded in general principles of contract law, this Court will refuse to interpret any arbitration agreement as applying to outrageous torts that are unforeseeable to a reasonable consumer in the context of normal business dealings.

* * *

In establishing the line for claims subject to arbitration, this Court does not seek to exclude all intentional torts from the scope of arbitration.  * * * We only seek to distinguish those outrageous torts, which although factually related to the performance of the contract, are legally distinct from the contractual relationship between the parties. *See McMahon v. RMS Electronics, Inc.,* 618 F. Supp. 189, 191 (S.D.N.Y. 1985).

*Id.* at ¶ 35, quoting Aiken v. World Fin. Corp., 373 S.C. 144, 644 S.E.2d 705 (2007).

{¶ 15} The *Arnold* court held that "[c]learly, a lawsuit arising from a rape is an outrageous tort that is legally distinct from the contractual relationship between the parties."  *Id.*, 2015-Ohio-4485, 48 N.E.3d 69.  Moreover, the *Arnold* court surveyed a vast amount of cases involving sexual assault-related claims against employers, including the following: *Smith v. Captain D's, L.L.C.*, 963 So.2d 1116 (Miss.2007) (where employee alleged that she was raped by her manager at the restaurant during working hours, her claims for sexual assault, negligent hiring, retention, and supervision of her manager, did not fall within the scope of the arbitration agreement that covered "any and all * * * disputes, or controversies arising out of or relating to my employment" because agreement could not be "construed as to encompass claims and parties that were not intended by the original contract."); *Niolet v. Rice*, 20 So.3d 31 (Miss.App.2009) (employee's claims of sexual assault and battery against her supervisor were not directly or indirectly related to

her employment); *Jones v. Halliburton*, 583 F.3d 228 (5th Cir.2009) (where plaintiff alleged that she had been gang-raped, her claims for false imprisonment, assault and battery, negligent supervision, hiring and retention, and intentional infliction of emotional distress as the events did not arise within the scope of the relationship); *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204 (11th Cir.2011) (where plaintiff alleged that she was drugged and raped by coworkers, her claims false imprisonment, intentional infliction of emotional distress, invasion of privacy, spoliation of evidence, and fraudulent misrepresentation were not connected to, did not relate to, did not arise out of her employment, and were not an immediately, foreseeable result of the employment).

{¶ 16} After undertaking this thorough analysis of the relevant issues, the *Arnold* court concluded:

> The complaint states that Arnold was constantly subjected to ongoing verbal and unwanted physical conduct that culminated in rape. On July 21, 2012, Arnold was cleaning the men/s restroom when Matthews entered, grabbed Arnold by her hair, pushed her against the door and forced her to give him oral sex. She has incurred and believes she will continue to incur treatment for her medical and psychological injuries. The complaint also states that Carrols had actual or constructive knowledge of Matthews' tendencies and that he posed a hazard.

> The complaint further provides that Carrols and supervisor Matthews retaliated or threatened to retaliate against Arnold, including termination, due to her attempt to enforce her rights; that she suffered unrelenting abuse, torment, harassment, threats, and embarrassment; and that she will require medical care and psychiatric counseling. It is also asserted that Carrols aided, abetted, incited, compelled, and coerced others to engage in unlawful discriminatory practices and/or interfere with or to obstruct Arnold.

> Based on the underlying facts, we find that Arnold's claims relating to and arising from the sexual assault exist independent of the

employment relationship as they may be "maintained without reference to the contract or relationship at issue." *Academy of Medicine,* 108 Ohio St.3d 185, 2006-Ohio-657, 842 N.E.2d 488, at ¶ 24; *Fazio*, 340 F.3d 386, at ¶ 395, and *Winters Law Firm. L.L.C. v. Groedel*, 8th Dist. Cuyahoga No. 99922, 2013-Ohio-5260, ¶ 14. Any individual could assert the same causes of action based on the underlying facts.

The second step of our scope of agreement analysis is to inquire whether the claims are a forseeable result of the employment. *Doe*, 657 F.3d at 1218-1219. We find that ongoing verbal and physical contact culminating in sexual assault as well as retaliation, harassment, or other detrimental acts against Arnold based on the unlawful conduct is not a foreseeable result of the employment.

*Id.*, 2015-Ohio-4485, 48 N.E.3d 69, ¶ 63-67.

{¶ 17} Similarly, in this matter, the complaint states that Crider was constantly subjected to ongoing verbal and unwanted physical conduct that culminated in Hall entering her office and sexually assaulting her. The complaint also states that GMRI had actual or constructive knowledge of Hall's tendencies and that he posed a hazard but was retained and not disciplined as his actions escalated. The complaint further alleges that GMRI and Crider's supervisor Lundeen retaliated against Crider by terminating her and that they aided, abetted, incited, compelled, and coerced others to engage in unlawful and discriminatory actions against her. According to the complaint, GMRI also negligently and intentionally inflicted emotional distress upon Crider, created a hostile work environment, and failed to provide a safe work environment.

{¶ 18} In accordance with the foregoing, we find that Crider's claims relating to and arising from the sexual assault exist independent of the employment relationship because they may be "maintained without reference to the contract or

relationship at issue." *Academy of Medicine,* 108 Ohio St.3d 185, 2006-Ohio-657, 842 N.E.2d 488, at ¶ 24; *Fazio*, 340 F.3d 386, at ¶ 395. In addition, we find that ongoing verbal and physical contact culminating in sexual assault as well as retaliation, harassment, or other detrimental acts against Crider based on the unlawful conduct is not a foreseeable result of the employment.

{¶ 19} GMRI insists, however, that under the clear terms of the arbitration provision, the arbitrator has the authority to determine arbitrability. We disagree. As set forth earlier, the parties cannot be compelled to arbitrate a dispute they have not agreed to submit to arbitration. *Natale*, 2018-Ohio-1412, 110 N.E.3d 829, ¶ 9. Although the arbitrator may determine if an employment-related dispute is arbitrable, the initial determination of whether the particular claim is actually employment-related or not is made by the court in accordance with its independent duty to do so. *Accord Shakoor v. VXI Global Solutions, Inc.*, 7th Dist. Mahoning No. 14 MA 59, 2015-Ohio-2587, ¶ 48. Such issue is a type of "gateway issue" that is to be decided by the judiciary. *Id.* at ¶ 41.

### Other Claims

{¶ 20} GMRI also argues that Crider's employment-related claims should proceed to arbitration. In opposition, Crider notes that GMRI has never produced a copy of the agreement containing her signature, and alternatively, waived it by failing to provide Crider with her remedies under the agreement.

{¶ 21} It is well settled that an arbitration agreement will not be enforced if the parties did not agree to the clause. *Harmon v. Philip Morris Inc.*, 120 Ohio

App.3d 187, 189, 697 N.E.2d 270 (8th Dist.1997). In *Harmon*, the employer's alternative dispute resolution and arbitration programs required the employee, but not the employer, to submit claims to arbitration. The employer gave the employee the option of accepting the program or working elsewhere, and the employer also reserved the right to terminate the program at any time. The employee "acknowledged receipt" of pamphlets explaining the agreement. In concluding that the employee was not required to arbitrate his claim for wrongful termination, this court found no "acceptance" of the agreement, no mutuality, and no consideration.

{¶ 22} Similarly, in *Hardwick v. Sherwin-Williams Co.*, 8th Dist. Cuyahoga No. 81575, 2003-Ohio-657, this court found lack of mutual assent to arbitrate where the plaintiff neither signed or acknowledged receipt of the Problem Resolution Procedures at the time of its distribution. *Id.* at ¶ 15. This court stated that the "mere fact that the plaintiffs continued working for defendant in and of itself fails to provide sufficient evidence of an agreement to be bound to arbitrate disputes" through arbitration. *Id.* at ¶ 15.

{¶ 23} Further, the right to arbitration is a matter of contract and can be implicitly or explicitly waived. *Bass Energy, Inc. v. Highland Hts.*, 193 Ohio App.3d 725, 2010-Ohio-2102, 954 N.E.2d 130, ¶ 33 (8th Dist.). Implicit waiver occurs where the party fails to assert its right or participates in litigation "to such an extent that its actions are 'completely inconsistent with any reliance' on this right, resulting in prejudice to the opposing party." *Id.*, quoting *Gen. Star Natl. Ins. Co. v.*

*Administratia Asigurarilor de Stat*, 289 F.3d 434, 438 (6th Cir. 2002), and *Gordon v. OM Fin. Life Ins. Co.*, 10th Dist. Franklin No. 08AP-480, 2009-Ohio-814.

{¶ 24} Here, there is no evidence that Crider signed the arbitration agreement, and there is insufficient evidence that she otherwise manifested assent to it. In any event, under the totality of the circumstances, GMRI proceeded directly to termination, and did invoke any of the steps in the provision. GMRI acted inconsistently with the terms of arbitration, thereby waiving it. Therefore, on this record, we conclude that the trial court properly refused to enforce the arbitration provision.

{¶ 25} The assigned error is without merit.

{¶ 26} The judgment of the trial court is affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON, PRESIDING JUDGE

LARRY A. JONES, SR., J., and
MARY EILEEN KILBANE, J., CONCUR